The CITY AND COUNTY OF
DENVER, Petitioner,

v.

The INDUSTRIAL COMMISSION OF the
STATE OF COLORADO, and Christine
R. Raigoza (Trujillo), Respondents.

No. 84CA0993.

Colorado Court of Appeals,
Div. III.

Sept. 26, 1985.

Rehearing Denied Oct. 31, 1985.

Certiorari Denied Jan. 21, 1986.

Stephen H. Kaplan, City Atty., Dianne E.
Eret, Asst. City Atty., Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B.
Howe, Chief Deputy Atty. Gen., Richard H.
Forman, Sol. Gen., Dani R. Newsum, Asst.
Atty. Gen., Denver, for respondent Indus.
Com'n.

No appearance for respondent Christine
R. Raigoza (Trujillo).

TURSI, Judge.

The City and County of Denver (Denver)
seeks review of a final order of the Industrial Commission which held that the Division of Employment and Training (Division)
properly transferred to California certain
"employment and wages" earned in Colorado. We affirm.

The facts of this case are undisputed.
Christine Raigoza (claimant) was employed
by Denver. In July 1982, claimant voluntarily quit her job and moved to California
to be with her husband. She then filed a
claim for unemployment compensation benefits based on her Colorado employment.
Wages paid claimant during the period
from April 1, 1981, through March 31,
1982, were used to establish her monetary
eligibility. This left second quarter wages
received by the claimant during the period
from April 1, 1982, until she left employment with Denver in May 1982 unused in
determining monetary eligibility.

In October 1982, a Colorado deputy issued an order concluding that claimant was subject to the maximum reduction in benefits pursuant to the statutory provision now codified as § 8–73–108(5)(e)(IV), C.R.S. (1984 Cum.Supp.) (moving to maintain contiguity with another person). This order was affirmed by a referee, and the decision became final.

Sometime in 1983, claimant filed a "combined-wage claim" in California seeking unemployment benefits based in part on employment in California. California requested Colorado to transfer employment and wages earned in Colorado as required by the Interstate Arrangement for Combining Employment Wages. 20 C.F.R. §§ 616.1 to 616.11 (1984); Industrial Commission Regulation 13.2.2, 7 Code Colo.Reg. 1101.2.

In September 1983, Denver received a notice from the Division stating that the Division intended to transfer the unused $2454 in wages which claimant earned in Colorado during the second calendar quarter of 1982. The notice indicated "potential charges" of $818. Denver then filed a protest with the Division asserting that the earlier adjudication precluded transfer of wages on payment of benefits. Denver relied upon 20 C.F.R. § 616.9(b)(2)(1984) and Industrial Commission Regulation 13.-2.10.2.2, 7 Code Colo.Reg. 1101.2. Those regulations provide that Colorado, as a transferring state, need not transfer:

> "Any employment and wages which have been canceled or are otherwise unavailable to the claimant as a result of a determination by the transferring state made prior to its receipt of the request for transfer, if such determination has become final or is in the process of appeal but is still pending."

A hearing was held before a referee, and the referee upheld the Division's determination that the wages were properly transferred. The Industrial Commission adopted and affirmed the referee's decision.

Colorado distinguishes between "monetary" eligibility determinations and "nonmonetary" determinations. The monetary eligibility is determined by the Division based upon wages earned during claimant's "base period." See § 8–70–103, C.R.S.; Industrial Commission Regulation 4.1.2, 7 Code Colo.Reg. 1101.2. On the other hand, the nonmonetary determination considers the reasons for claimant's separation from her employer. See § 8–73–108, C.R.S.

In this case, claimant's wages from the second quarter of 1982 which were transferred to California did not constitute wages earned during the base period relevant to her first claim. The benefits denied claimant were derived from wages earned prior to April 1, 1982.

Since the wages earned during the second quarter have not been the basis of any benefit determination, the Commission concluded that the benefits associated with them were still available for transfer to another state to be used in computing monetary eligibility on a combined-wage claim. Similarly, had the claimant filed a subsequent Colorado unemployment claim, the division would have used the second quarter 1982 wages to establish the claimant's monetary eligibility. In addition to the fact that the transferred wages had not been the basis of prior benefit calculations, the prior adjudication did not "cancel" or render "unavailable" the second quarter wages.

There is no statutory provision requiring or authorizing the cancellation of wages. The Division concluded that the Colorado adjudication merely deprived claimant of "benefits" attributable to base period wages, see § 8–73–108(5)(e), C.R.S. (1984 Cum.Supp.), and that subsequent adjudication of a job separation does not affect a claimant's monetary eligibility but does affect her entitlement to benefit credits derived from the wages used to establish monetary eligibility.

Additional support for the Commission's interpretation of the pertinent regulations follows as a matter of construction. The Division determined that the interstate arrangement on combined wage claims requires that available funds be transferred.

This is based on 20 C.F.R. § 619.(a)(1984) and Industrial Commission Regulation 13.-2.10.1, which provide that:

"Each transferring state shall promptly transfer to the paying state the employment and wages the combined-wage claimant had in covered employment during the base period of the paying state. Any employment and wages so transferred shall be transferred without restriction as to their use for determination and benefit payments under the paying state's law."

Further, § 8–73–108(5)(e), C.R.S. (1984 Cum.Supp.), provides that, "insofar as consistent with interstate agreements," an employer shall not be charged for benefits if separation occurs for any enumerated reason.

Accordingly, the second quarter wages are available for transfer. An interpretation that claimant's wages were cancelled or unavailable would place an unnecessary and unauthorized restriction on the transfer of otherwise available wages. The stated purpose of the interstate arrangement is to facilitate the filing of combined-wage claims in order to allow unemployed workers "to qualify for benefits or to receive more benefits." Industrial Commission Regulation 13.2.2, 7 Code Colo.Reg. 1101.2. The Commission's interpretation of these regulations is consistent with this purpose.

Industrial Commission Regulation 13.2.-10.2.2, relied upon by Denver, was adopted as part of the interstate arrangement on combined-wage claims. Authority to enter into the arrangement was expressly conferred by the General Assembly. Section 8–72–110(2), C.R.S. (1984 Cum.Supp.). Consequently, the Commission's interpretation of the arrangement is "entitled to great weight." *Mohawk Data Sciences Corp. v. Industrial Commission,* 671 P.2d 1335 (Colo.App.1983).

■ Denver also argues that to allow the transfer of the second quarter wages results in the relitigation of issues already decided. Denver contends that this transfer violates the principles of *res judicata* and collateral estoppel. We disagree.

As noted in the referee's findings of fact and conclusions, the prior adjudication in Colorado was determinative only of benefits derived from wages other than those transferred. Denver is to be only secondarily liable based on a monetary determination of her combined-wage claim. The issue of claimant's eligibility based on her separation in California is in no way controlled by the prior Colorado adjudication.

Order affirmed.

BERMAN and METZGER, JJ., concur.